Alex R. Straus (SBN 321366)
Astraus@Milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (917) 471-1894
Facsimile: (310) 496-3176

*Counsel for Plaintiff and Proposed Classes*

*Additional attorneys on signature page*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

MOSANTHONY WILSON and JAMES
CORSEY, individually and on behalf of
all others similarly situated,

                        Plaintiffs,

            v.

THRIVING BRANDS, LLC, HENKEL
AG & CO. KGAA, and THE DIAL
CORPORATION d/b/a HENKEL NORTH
AMERICAN CONSUMER GOODS,
                        Defendants.

Case No.: **'21 CV 1988 H     RBB**

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

        Plaintiffs Mosanthony Wilson and James Corsey ("Plaintiffs") bring this Class Action

Complaint against Thriving Brands LLC ("Thriving Brands"), Henkel AG & Co. KGaA

("Henkel AG"), and The Dial Corporation d/b/a Henkel North American Consumer Goods

("Henkel USA") (collectively "Defendants"), individually and on behalf of all others similarly

situated, and complain and allege upon personal knowledge as to themselves and their own acts

**CLASS ACTION COMPLAINT**

and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1.      This is a civil class action brought by Plaintiffs on behalf of all consumers who purchased Right Guard Sport Fresh antiperspirant aerosol ("Right Guard Sport Fresh" or the "Product") from Defendants for normal, household use. The Product is defective because it contains the chemical benzene, a known carcinogen that offers no therapeutic deodorant or antiperspirant benefit.

2.      The Right Guard brand, the second largest male deodorant brand in the United States, was first introduced in 1960 and is currently owned by Defendant Thriving Brands.  Thriving Brands acquired the Right Guard brand from Defendant Henkel USA in 2021, and with it the brand recognition and trust of consumers Right Guard has built over the course of its 60-year lifespan. Defendants know that consumers reasonably believe the Right Guard brand, including the defective Product at issue, are made with quality materials and can be used safely as intended.

3.      Defendants formulate, design, manufacture, market, advertise, distribute, and sell the Product to consumers throughout the United States, including in the State of New York.

4.      Defendants distribute and sell the Product through various authorized retailers in store and online.

5.      Defendants took advantage of the trust consumers have in the Right Guard brand, representing that the Product is safe for its intended use when, in reality, the Product contains significant concentrations of benzene, a harmful carcinogen.

6.      Benzene is a carcinogen known to cause cancer in humans. Long-term exposure additionally causes harmful effects on the bone marrow, a decrease in red blood cells leading to

**CLASS ACTION COMPLAINT**

anemia, and excessive bleeding that can affect the immune system, leading to an increased chance of infection. According to FDA guidance, there is no safe level of benzene, and thus it "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity." FDA, Q3C – 2017 Tables and List Guidance for Industry, https://www.fda.gov/media/71737/download.

7.      FDA guidance provides that "if [benzene's] use is unavoidable in order to produce a drug product with a significant therapeutic advance, then [its] levels should be restricted" to 2 parts per million ("ppm"). *Id.*

8.      The use of benzene in the Product is demonstrably avoidable. Feasible alternative formulations, designs, and materials were available to Defendants at the time they formulated, designed, and manufactured the Product.  Critically, such alternative formulations and designs were and are used by other manufacturers to produce and sell non-defective spray deodorants and antiperspirants.   In any event, the Product has a benzene concentration far above the FDA concentration limit of 2 ppm.

9.      The Product's benzene contamination was not disclosed to the consumer on the product label, the ingredients list, or otherwise.

10.      Plaintiffs seek damages and equitable remedies for themselves, and for the proposed Classes.

## PARTIES

### A.  Plaintiffs

11.      Plaintiff Mosanthony Wilson is a resident and citizen of San Diego, California who purchased and used Right Guard Sport Fresh antiperspirant aerosol within the relevant time period.

**CLASS ACTION COMPLAINT**

12.     Plaintiff James Corsey is a resident and citizen of Malden Bridge, New York who purchased and used Right Guard Sport Fresh antiperspirant aerosol within the relevant time period.

**B.  Defendants**

13.     Defendant Henkel AG & Co. KGaA is a German multinational company headquarted in Düsseldorf, Germany that produces consumer goods sold around the world, including in the United States generally and New York specifically.

14.     Defendant The Dial Corporation d/b/a Henkel North American Consumer Goods is a privately held, wholly owned subsidiary of Henkel AG & CO. KGaA and is headquartered in Stamford, Connecticut.

15.     Defendant Thriving Brands LLC is a privately held company incorporated in Delaware and headquartered in Columbus, Ohio.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiffs and Defendants are citizens of different states. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

17.     This Court has personal jurisdiction over Defendants because they has substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, because Defendants placed the Product into the stream of commerce directed at

**CLASS ACTION COMPLAINT**

this District, and because Defendants purposely availed themselves of the laws of the United States and the State of New York.

18.    In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendants transact business in this District, and Defendants have intentionally availed themselves of the laws and markets within this District.

## FACTUAL ALLEGATIONS

### A.  The Right Guard Brand

19.    The Right Guard brand was first introduced by the Gillette Company in 1960 and, for the past 60 years, it has built a reputation for selling safe, quality, and effective men's deodorant and antiperspirant.  The Gillette Company was acquired by The Procter & Gamble Company in 2005 and one year later in 2006 the Right Guard brand was sold as part of a $420 million deal to Defendant Henkel USA, a subsidiary of Henkel AG (together "Henkel").

20.    Henkel is a large multinational consumer goods company known for its wide range of personal care and hygiene products, including the Right Guard brand and the antiperspirant Product at issue here.  Henkel's "products and technologies are available worldwide . . . [w]ith employees from 125 nations and locations around the world."[1]

21.    Defendant Thriving Brands is a privately held company formed in 2021 to purchase the Right Guard brand and one other consumer goods brand from Henkel.  Thriving Brands describes itself as "[a] seasoned team of consumer packaged goods executives" who "bring excitement and growth to our brands by understanding their right to win . . . based on an intimate

---

[1] https://www.henkel.com/company/locations (last visited Nov. 19, 2021).

**CLASS ACTION COMPLAINT**

knowledge of our consumers' needs, wants, and aspirations."[2]   Thriving Brands has just two brands—Right Guard and Dry Idea—and it claims to be "[c]ultivating brands to grow to new heights."[3]

22.     Defendants' Right Guard product line, including the Product, is manufactured, distributed, and sold throughout the United States, including the State of New York.

**B.  The Product**

23.     Deodorant is a product applied to the body to prevent or mask the odor of perspiration. Antiperspirants, a subclass of deodorants, prevent sweat glands from producing sweat. The Product is both a deodorant and antiperspirant applied to the body as a spray.

24.     The U.S. Food and Drug Administration ("FDA") classifies and regulates most deodorants, including the Product, as cosmetics.  In addition, the FDA classifies and regulates antiperspirants, including the Product, as a drug.

25.     On November 3, 2021, Valisure, an analytical pharmacy and consumer protection organization, petitioned the FDA to address the dangerous levels of benzene in the Product and other deodorants and antiperspirants based upon rigorous testing the organization had conducted for a number of spray deodorant and antiperspirant products.[4] The next day, Valisure released the results of these tests.[5]

---

[2] https://thriving-brands.com/about-us/ (last visited Nov. 22, 2021)
[3] https://thriving-brands.com/brands/ (last visited Nov. 22, 2021)
[4] https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-3.pdf (last visited Nov. 9, 2021).
[5] https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-body-spray-products-3/ (last visited Nov. 8, 2021).

**CLASS ACTION COMPLAINT**

26.     In testing, Valisure found average concentrations of benzene above the FDA concentration limit of 2 ppm in 16 spray deodorants, including the Product which is manufactured and sold by Defendants.

27.     In particular, Valisure found benzene concentrations of 2.87 ppm in Right Guard Sport Fresh aerosol antiperspirant.  Furthermore, independent testing conducted at a laboratory at Yale University found benzene concentrations of 5.07 ppm in the Product, 2.5 times the FDA concentration limit.[6]

**C.  Danger Posed by the Product**

28.     The carcinogenic properties of benzene are well documented, as noted be the Centers for Disease Control and Prevention ("CDC"). See CDC, Facts About Benzene (2018), https://emergency.cdc.gov/agent/benzene/basics/facts.asp.

29.     The U.S. Department of Health and Human Services (DHHS) has determined that benzene causes cancer in humans. Long-term exposure to high levels of benzene can cause leukemia, cancer of the blood-forming organs.

30.     Long-term exposure to benzene additionally causes harmful effects on the bone marrow and can cause a decrease in red blood cells, leading to anemia.  It can also cause excessive bleeding and can affect the immune system, increasing the chance for infection.

31.     Due to these significant health risks, the World Health Organization and the International Agency for Research on Cancel classify benzene as a Group 1 compound that is "carcinogenic to humans."[7]

---

[6] https://www.consumerlab.com/answers/benzene-contamination-in-deodorants-and-antiperspirants/benzene-deodorants/ (last visited Nov. 22, 2021)
[7] https://www.who.int/water_sanitation_health/dwq/chemicals/benzenesum.pdf (last visited Nov. 7, 2021).

7

**CLASS ACTION COMPLAINT**

32.     The FDA classifies Benzene as a Class 1 compound.[8]  According to FDA guidance: "Solvents in Class 1 should not be employed in the manufacture of drug substances, excipients, and drug products, because of their unacceptable toxicity or their deleterious environmental effect."[9]  The FDA concentration limit for benzene is 2 ppm.[10]

33.     Thriving Brands put Right Guard's "right to win" over consumer safety, exploiting decades of existing consumer trust in the Right Guard brand to sell the Product contaminated with a benzene concentration level above the 2 ppm FDA concentration limit, thus subjecting unwitting consumers to dangerous levels of a known carcinogen.

**D.  Defendants' Representations**

34.     Defendants represent to consumers that the Product is safe and effective for everyday use, assuring consumers that "Right Guard Sport has you protected."  Although Right Guard Sport Fresh aerosol antiperspirant was found to contain benzene concentration above the FDA limit, Defendants do not list benzene among the active or inactive ingredients anywhere on its website,[11] and nothing on the Product label otherwise insinuates, states, or warns that the Product contains benzene:

---

[8] https://www.fda.gov/media/71737/download (last visited Nov. 7, 2021).
[9] *Id.*
[10] *Id.*
[11] https://www.rightguard.com/products/sport/aerosol/sport-fresh-48-hour/ (last visited Nov. 22, 2021)

**CLASS ACTION COMPLAINT**

**Drug Facts**

| Active Ingredient | Purpose |
| --- | --- |
| Aluminum Chlorohydrate 20.0% | Antiperspirant |

**Use** • Reduces underarm perspiration

**Warnings** • For external use only.

Flammable.
- Do not spray near flame or while smoking.
- Contents under pressure; do not crush, puncture, or incinerate.
- Do not store at temperature above 120° F.
- Keep out of direct sunlight.

**Do not use** on broken skin.

**Stop use and ask a doctor** if rash or irritation occurs.

**When using this product:**
- Use only as directed; intentional misuse by deliberately concentrating and inhaling the contents can be harmful or fatal.
- Avoid spraying in eyes.
- Keep away from face and mouth to avoid breathing it.

**Keep out of reach of children.**
If swallowed, get medical help or contact a Poison Control Center right away.

**Ask a doctor before use** if you have kidney disease.

**Directions:** SHAKE WELL.  KEEP CAN UPRIGHT WHEN SPRAYING. Failure to do so may prevent product from dispensing. Hold can 6" from underarm, point and spray. Apply to underarms only.

**Inactive ingredients:**
Butane • Cyclomethicone • Hydrofluorocarbon 152a • PPG-14 Butyl Ether • Isobutane • Disteardimonium Hectorite • Propane • Pentane • Propylene Carbonate • Parfum (Fragrance)[12]

### E.  Defendants' Product is Adulterated and Illegal to Sell

35.     Defendants' antiperspirant Product is a drug which is adulterated under 21 U.S.C.

§ 351(a)(1) based upon the presence of benzene.

---

[12] https://www.walmart.com/ip/Right-Guard-Sport-Antiperspirant-Deodorant-Aerosol-Fresh-6-oz/10311591 (last visited Nov. 22, 2021)

**CLASS ACTION COMPLAINT**

36.    The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

37.    California's Sherman Law has expressly adopted the federal labeling requirements as its own. The definition of "adulterated" is exactly the same as the FD&C Act under CA Health & Safety Code Sections 111250, 111255, 111260, and 111265.

38.    As alleged herein, Defendants have violated the FDCA, the Sherman Law, and consumer protection statutes.

39.    Defendants engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from their omissions surrounding benzene contamination affecting the Product.

40.    No reasonable consumer, including Plaintiffs, would have purchased the Product had they known of the material omissions of material facts regarding the presence of benzene. Accordingly, Plaintiffs and the Classes (as defined below) suffered injury in fact and lost money as a result of Defendants' misleading representations and omissions and did not receive the benefit-of-the- bargain.

41.    Plaintiffs and the Classes' injury is underscored by the fact that numerous other products offering the same therapeutic benefit at comparable prices exist that are not contaminated with benzene.

42.    Plaintiffs and the Classes may be harmed again because they want to purchase the Product in the future; however, without injunctive relief Plaintiffs would not be able to know or trust that Defendants will truthfully and legally label the Product and would likely be misled again.

**CLASS ACTION COMPLAINT**

## PLAINTIFFS' FACTUAL ALLEGATIONS

### PLAINTIFF MOSANTHONY WILSON

43.     Plaintiff Mosanthony Wilson has purchased Right Guard Sport Fresh aerosol antiperspirant regularly for approximately four years, typically once or twice each month.  The last time Plaintiff Wilson purchased the Product was in or around October 2021.  Plaintiff Wilson purchases the Product at Walmart in San Diego, California.

44.     Nowhere on the packaging did Defendants disclose that the Product contains benzene at the time of purchase.

45.     If Plaintiff Wilson had been aware of the existence of benzene in the Product, he would not have purchased the Product or would have paid significantly less.

46.     As a result of Defendants' actions, Plaintiff Wilson has incurred damages, including economic damages.

### PLAINTIFF JAMES CORSEY

47.     Plaintiff Corsey has purchased Right Guard Sport Fresh regularly for many years, typically a few times each year.  The last time Plaintiff Corsey purchased the Product was in or around February 2021.  Plaintiff Corsey typically purchases the Product at Price Chopper in Rensselaer, New York or Walmart in East Greenbush, New York.

48.     Nowhere on the packaging did Defendants disclose that the Product contains benzene at the time of purchase.

49.     If Plaintiff Corsey had been aware of the existence of benzene in the Product, he would not have purchased the Product or would have paid significantly less.

50.     As a result of Defendants' actions, Plaintiff Corsey has incurred damages, including economic damages.

**CLASS ACTION COMPLAINT**

## <u>CLASS ACTION ALLEGATIONS</u>

51.     Plaintiffs brings this action individually and as representatives of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-defined Classes:

> **National Class:** During the fullest period allowed by law, all persons in the United States who purchased Right Guard Sport Fresh aerosol antiperspirant for their personal use and not for resale within the United States.

> **New York Subclass:** During the fullest period allowed by law, all persons in the United States who purchased Right Guard Sport Fresh aerosol antiperspirant for their personal use and not for resale in the State of New York.

52.     Members of the classes described are referred to as "Class Members" or members of the "Classes."

53.     The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

54.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

55.     Plaintiffs reserves the right to amend the definitions of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

**CLASS ACTION COMPLAINT**

56.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiffs but may be ascertained from Defendants' books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

57.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

  a)  Whether the Product contains benzene at the time of purchase;

  b)  Whether Defendants omitted or failed to disclose material information to Plaintiffs and Class Members regarding the Product;

  c)  Whether the Product is defectively designed, formulated, and/or manufactured;

  d)  Whether Defendants knew or reasonably should have known about the harmful level of benzene in the Product prior to distributing and selling them to Plaintiffs and Class Members;

  e)  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product is deceptive;

  f)  Whether Defendants' actions violate the consumer protection statutes invoked herein;

  g)  Whether Defendants breached the implied warranty of merchantability relating to the Product;

  h)  Whether Defendants breached an express warranty to Plaintiffs and Class Members;

**CLASS ACTION COMPLAINT**

i)   Whether Defendants were unjustly enriched at the expense of the Plaintiffs and Class Members;

j)   Whether Plaintiffs and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

k)   Whether Plaintiffs and the other Class Members have been injured and the proper measure of their losses as a result of those injuries; and

l)   Whether Plaintiffs and the Class Members are entitled to injunctive, declaratory, or other equitable relief.

58.   Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

59.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class Members, as each class member was subject to the same omission of material fact and misrepresentations regarding the presence of benzene in the Product. Plaintiffs shares the aforementioned facts and legal claims or questions with Class Members, and Plaintiffs and all Class Members have been similarly affected by Defendants' common course of conduct alleged herein.   Plaintiffs and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' deceptive omission of material fact and misrepresentations regarding the presence of benzene in the Product.

60.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Classes because they are members of the Classes and her interests do not conflict with the interests of the Class Members she seeks to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class

14

**CLASS ACTION COMPLAINT**

action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

61.  **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).**

Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. Accordingly, the proposed Classes satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

62.  **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**

Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and All Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

63.  **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

- The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

- Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

- The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

- Individual joinder of all putative Class Members is impracticable;

- Absent a class action, Plaintiffs and putative Class Members will continue to suffer harm as a result of Defendants' unlawful conduct; and

15

**CLASS ACTION COMPLAINT**

- This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and putative Class Members can seek redress for the harm caused by Defendants.

64.    In the alternative, the Classes may be certified for the following reasons:

- The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

- Adjudications of individual Class and Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

- Defendants have acted or refused to act on grounds generally applicable to the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

**COUNT I**
**California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of Plaintiff Wilson and the California Subclass)**

65.    Plaintiff Wilson repeats and re-alleges the allegations above as if set forth herein.

66.    Defendants' conduct constitutes violations under California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq.. The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

67.    Defendants' conduct falls within the meaning of this statute because they caused transactions to occur resulting in the sale or lease of goods or services to consumers – namely, the sale of the Product to Plaintiff Wilson and the Class. Deodorant and antiperspirant sprays are

**CLASS ACTION COMPLAINT**

considered goods within the meaning of the statute under Civil Code § 1761(a) and Defendants' sale of the Product is considered a service under Civil Code § 1761(b).

68.     Plaintiff Wilson and Class Members are consumers pursuant to the CLRA.

69.     Defendants violated the CLRA by way of the following provisions:

- In violation of Civil Code § 1770(a)(5), Defendants represented (and continue to represent) that their goods have characteristics which they do not have – that, in exchange for each payment, Plaintiff Wilson and the members of the Class receive antiperspirant which is functioning as intended and which is not contaminated with benzene;

- In violation of Civil Code § 1770(a)(14), Defendants represented (and continue to represent) that a consumer has rights, remedies and/or obligations which they did not have – that Plaintiff Wilson and members of the Class receive antiperspirant which is functioning as intended and which is not contaminated with benzene, and that Defendants are capable of correcting defects when they are not;

70.     Defendants also engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code § 1770(a)(5) and (a)(7) when they represented through their advertising, warranties, and other express representations that the Product has benefits or characteristics that they did not actually have, namely that the Product was safe to use and failing to disclose that the Product was contaminated with the carcinogen benzene.

71.     Defendants are aware that their representations are false and misleading – specifically, the Defendants continued to sell the Product into the stream of commerce even after they had knowledge that the Product was contaminated with benzene.

**CLASS ACTION COMPLAINT**

72.     Plaintiff Wilson and California Subclass have suffered injury-in-fact and actual damages resulting from Defendants' omissions and misrepresentations because Defendants knew that the Product was contaminated with benzene.

73.     On November 24, 2021, prior to the filing of this Complaint, Plaintiff Wilson and Class Members put Defendants on written notice of their claims arising from violations of numerous provisions of California law, including the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1770, et seq., as well as other causes of action.  Plaintiff Wilson will amend his Complaint to add claims for monetary damages if P&G fails to take the corrective actions.

74.     In accordance with Civil Code § 1780(a), Plaintiff Wilson and the other California Subclass Members seek injunctive and equitable relief for Defendants' violations of the CLRA, including an injunction to enjoin Defendants from continuing their deceptive advertising and sales practices.

75.     Pursuant to California Civil Code § 1780(a)(1)-(5) and § 1780(e), Plaintiff Wilson seeks an order enjoining Defendants from the unlawful practices described above, a declaration that Defendants' conduct violates the Consumers Legal Remedies Act, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

76.     Plaintiff Wilson and the California Subclass Members' injuries were proximately caused by Defendants' fraudulent business practices.

77.     Therefore, Plaintiff Wilson and California Subclass Members are entitled to relief under the CLRA.

**CLASS ACTION COMPLAINT**

**COUNT II**
**California's False Advertising Law (the "FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of Plaintiff Wilson and the California Subclass)**

78.     Plaintiff Wilson repeats and re-alleges the allegations above as if set forth herein.

79.     California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

80.     Defendants advertised and promoted the Product by relying on the trust and brand loyalty customers had for their Right Guard brand and representing that the Product was safe for personal use, when in reality the Product was contaminated with benzene.  Defendants' advertisements and inducements were made in and originated from California and fall within the definition of advertising as contained in Bus. & Prof. Code § 17500, et seq. in that Defendants' representations were intended to induce consumers to purchase the Product. Defendants knew that those statements were false and misleading as it knew or should have known through the exercise of reasonable care that the Product was contaminated with benzene.

81.     Plaintiff Wilson and the California Subclass lost money or property as a result of Defendants' FAL violations because (a) they would not have purchased Defendants' Product absent Defendants' representations that the Product was safe and effective; (b) they would not

**CLASS ACTION COMPLAINT**

have purchased the Product for the same price absent Defendants' misrepresentations; and (c) Defendants' Product did not have the characteristics, benefits, or quantities as promised.

**COUNT III**
**California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(On Behalf of Plaintiff Wilson and the California Subclass)**

82.     Plaintiff Wilson repeats and re-alleges the allegations above as if set forth herein.

83.     Defendants engaged in unlawful, fraudulent, and unfair business practices.

84.     Defendants' conduct was unlawful because it violates the CLRA, the FAL, tort law, and contract law.

85.     Defendants' conduct is fraudulent because they continued to represent that their goods were fit for their intended use when they knew that the Product was contaminated with benzene in an attempt to get consumers to continue to buy the Product; and, Defendants' conduct is fraudulent because they did not disclose to the buyers that the Product was contaminated with benzene and continue to conceal the fact of this contamination in an attempt to keep consumers from seeking refunds or seeking other redress, so they would not bear the costs of the defect and any damage it may have caused.

86.     Defendants' conduct constitutes an unfair business practice – under the UCL, a business practice is considered to be "unfair" if the conduct alleged is immoral, unethical, oppressive, or substantially injurious to consumers; as well as if the conduct causing alleged injury which is not outweighed by benefits to other consumers or to competition, and that the injury is of a type which the consumer could not have avoided.

**CLASS ACTION COMPLAINT**

87.     Defendants' behavior is immoral, unethical, oppressive and injurious to consumers because they are profiting from concealing the presence of benzene in the Product, which is still being sold to this day.

88.     Defendants' retention of profits from the aforementioned conduct does not outweigh the economic harm that said retention imposes on consumers. The lone party that benefits is the Defendants – their conduct also harms competition, who would otherwise be the recipient of the business that Defendants acquired using omissions and misrepresentations.

89.     Plaintiff Wilson and the California Subclass Members had no way of knowing that Defendants were selling defective products.

90.     Therefore, Plaintiff Wilson and the California Subclass Members are entitled to relief under the UCL.

**COUNT IV**
**Violation of New York General Business Laws § 349**
**(On Behalf Of Plaintiff Corsey and The New York Subclass)**

91.     Plaintiff Corsey hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

92.     N.Y. Gen. Bus. Law §349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

93.     Defendants' actions occurred in the conduct of business, trade, or commerce.

94.     Defendants' conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of the N.Y. Gen. Bus. Law.

95.     Defendants' deceptive acts and practices were intended to mislead consumers in a material way in the process of purchasing Defendants' Product, and a reasonable consumer would be misled by their deceptive acts and practices.

**CLASS ACTION COMPLAINT**

96.    All of Defendants' deceptive acts and practices constitute conduct directed at consumers.

97.    Defendants intended that Plaintiff Corsey and each of the other members of the New York Subclass would rely upon their deceptive conduct and false advertising, and consumers, including Plaintiff Corsey and putative New York Subclass Members, did in fact rely upon deceptive conduct.

98.    Defendants' foregoing deceptive and unfair acts and practices, including its omissions, were and are deceptive acts or practices in violation of the N.Y. Gen. Bus. Law § 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, et seq., in that Defendants manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Product without any mention of the fact that the Product contains the carcinogen benzene.

99.    Defendants' unconscionable, deceptive, and/or unfair practices caused actual damages to Plaintiff Corsey and the New York Subclass Members who were unaware that the Product contained benzene.

100.    As a direct and proximate result of Defendants' deceptive acts and practices, including its omissions, Plaintiff Corsey and New York Subclass Members have been damaged as alleged herein and are thus entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

101.    In addition, Plaintiff Corsey and New York Subclass Members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, in addition to reasonable attorneys' fees and costs.

102.    In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**CLASS ACTION COMPLAINT**

**COUNT V**
**Violation of New York General Business Laws § 350**
**(On Behalf Of Plaintiff Corsey and The New York Subclass)**

103.    Plaintiff Corsey hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

104.    N.Y. Gen. Bus. Law §350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

105.    Defendants' actions occurred in the conduct of business, trade, or commerce.

106.    Defendants' foregoing acts and practices, including their advertising, were directed at consumers.

107.    Defendants' conduct, as described in the Complaint, constitutes "false advertising" within the meaning of the N.Y. Gen. Bus. Law §350, as Defendants publicly disseminating misleading false advertisements through advertising and marketing the Product, failing to disclose that the Product contains benzene, a known carcinogen.

108.    Defendants' foregoing, consumer-oriented, unfair or deceptive acts and practices, including its advertising, representations, and omissions, constitutes false and misleading advertising in a material way in violation of the N.Y. Gen. Bus. Law § 350.

109.    Defendants' false, misleading, and deceptive advertising and representations include misrepresenting and misleadingly marketing and labeling the Product was fit for their intended purpose of safely masking or preventing body odor and omitting and failing to disclose that the Product contains the carcinogen benzene.

110.    Defendants' false, misleading, and deceptive advertising and representations of fact were and are directed at consumers.

**CLASS ACTION COMPLAINT**

111.    Defendants' false, misleading, and deceptive advertising and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

112.    Defendants' false, misleading, and deceptive advertising and representations of fact have resulted in consumer injury or harm to the public interest.

113.    Defendants intended that Plaintiff Corsey and the other members of the New York Subclass would rely upon their deceptive conduct and false advertising, and a reasonable person would in fact be misled by this deceptive conduct. Defendants engaged in misleading and deceptive advertising that failed to disclose that the Product contains benzene.  Defendants chose to label the Product in this way to impact consumer choices and gain market dominance, as they are aware that all consumers who purchased the Product would be unwilling or less likely to buy the Product if those consumers knew the Product contained benzene, a harmful carcinogen known to cause cancel.  Thus, Defendants' advertising and labeling was an unfair, untrue, and misleading practice.

114.    Consumers, including Plaintiff Corsey and New York Subclass members either would not have purchased the Product or would have paid less for them had the known that the Product contains benzene.

115.    As a direct and proximate result of Defendants' deceptive acts and practices, including their use or employment of false advertising, Plaintiff Corsey and each of the other members of the New York Subclass have sustained actual damages in an amount to be proven at trial.

116.    In addition, Plaintiff Corsey and New York Subclass members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, in addition to reasonable attorneys' fees and costs.

**CLASS ACTION COMPLAINT**

117.   In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT VI**
**Breach of Express Warranty**
**(On Behalf of the National Class and,**
**alternatively, the California and New York Subclasses)**

118.   Plaintiffs hereby re-allege and incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

119.   Plaintiffs, and each member of the Classes, formed a contract with Defendants at the time Plaintiffs and each member of the Classes purchased the Product.

120.   The terms of the contract include the promises and affirmations of fact made by Defendants on the Product's packaging and through marketing and advertising, as described above.

121.   This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Classes and Defendants.

122.   As set forth above, Defendants purport through its advertising, labeling, marketing, and packaging, to create an express warranty that the Product is safe for its intended use.

123.   Plaintiffs and the members of the Classes performed all conditions precedent to Defendants' liability under this contract when they purchased the Product.

124.   Defendants breached express warranties about the Product and their qualities because Defendants' Product contained the harmful carcinogen benzene at the time of purchase and the Product does not conform to Defendants' affirmations and promises described above.

125.   Plaintiffs and each of the members of the Classes would not have purchased the Product had they known the true nature of the harmful chemical in the Product.

**CLASS ACTION COMPLAINT**

126.    As a result of Defendants' breach of warranty, Plaintiffs and each of the members of the Classes have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from their purchases.

**COUNT VII**
**Breach of Implied Warranty**
**(On Behalf of the National Class and,**
**alternatively, the California and New York Subclasses)**

127.    Plaintiffs hereby re-allege and incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

128.    Defendants provided Plaintiffs and Class Members with implied warranties that the Product was merchantable and fit for the ordinary purposes for which it was sold, i.e. that it was free of harmful chemicals such as benzene.

129.    Defendants marketed, sold, and/or distributed the Product, and Plaintiffs and other Class Members purchased the Product.

130.    Plaintiffs bring this claim for breach of the implied warranty of merchantability on behalf of themselves and other consumers who purchased the Product with the expectation of the Product not containing the dangerous chemical benzene.

131.    Defendants have breached the implied warranties of merchantability that they made to Plaintiffs and the prospective class. For example, Defendants impliedly warranted that the Product was free from defects, that it was merchantable, and that it was safe and fit for the ordinary purpose for which antiperspirant is used.

132.    When sold by Defendants, the Product was not merchantable, did not pass without objection in the trade, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the container or label.

**CLASS ACTION COMPLAINT**

133.     As a result of Defendants' breaches of implied warranties, Class Members did not receive the benefit of their bargain and suffered damages at the point of sale stemming from their overpayment for the  Product that contained benzene.

134.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the other Class Members have been damaged in an amount to be proven at trial.

**COUNT VIII**
**Unjust Enrichment**
**(In the Alternative To Count I And On Behalf of the National Class and, alternatively, the California and New York Subclasses)**

135.     Plaintiffs hereby re-allege and incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

136.     Plaintiffs and the other members of the Classes conferred benefits on Defendants by purchasing the Product.

137.     Defendants have been unjustly enriched in retaining the revenues derived from the purchase of the Product by Plaintiffs and the other members of the Classes.

138.     Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Product was misleading to consumers, which caused injuries to Plaintiffs and the other members of the Classes because they would have not purchased the Product if Defendants had disclosed that the Product contained benzene.

139.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the other members of the Classes for their unjust enrichment, as ordered by the Court.

**REQUEST FOR RELIEF**

27

**CLASS ACTION COMPLAINT**

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, pray for judgment and relief against Defendants as follows:

a)  For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiffs to serve as representatives for the Classes and Plaintiffs' counsel to serve as Class Counsel;

b)  For an order enjoining Defendants from continuing to engage in the unlawful conduct set forth herein;

c)  For an order awarding restitution of the monies Defendants wrongfully acquired by their illegal and deceptive conduct;

d)  For an order requiring disgorgement of the monies Defendants wrongfully acquired by their illegal and deceptive conduct;

e)  For compensatory and punitive damages, including actual and statutory damages, arising from Defendants' wrongful conduct and illegal conduct;

f)  For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g)  For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated: November 24, 2021                    Respectfully submitted,


                                            By:

                                            **MILBERG COLEMAN BRYSON
                                            PHILLIPS GROSSMAN PLLC**

                                            */s/* Alex R. Straus

**CLASS ACTION COMPLAINT**

Alex R. Straus, Esq. (SBN 321366)
280 S. Beverly Drive
Beverly Hills, CA 90212
Tel.:    (917) 471-1894
Fax:     (310) 496-3176
Email: astraus@milberg.com

Nick Suciu, III*
*nsuciu@milberg.com*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.:    (313) 303-3472
Fax:     (865) 522-0049

Jennifer Czeisler*
Virginia Ann Whitener*
Russell Busch*
*jczeisler@milberg.com*
*gwhitener@milberg.com*
*rbusch@milberg.com*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.:    (865) 247-0080
Fax:     (865) 522-0049

*Pro Hac Vice* Application
Forthcoming

*Attorneys for Plaintiff*

**CLASS ACTION COMPLAINT**